UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZSCAQULINE M.,<br><br>                              Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of<br>Social Security,<br><br>                              Defendant. | Case No.:  19-cv-2010-DEB<br><br>**ORDER REVERSING DENIAL OF<br>BENEFITS AND REMANDING FOR<br>FURTHER PROCEEDINGS**<br><br>**[DKT. NO. 19]** |

## I.    INTRODUCTION

On October 18, 2019, Plaintiff Zscaquline M. filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her applications for disability insurance benefits and Supplemental Security Income ("SSI"). Dkt. No. 1. The parties filed a Joint Motion for Judicial Review of the administrative law judge's ("ALJ") decision denying Plaintiff benefits. Dkt. No. 19. For the reasons discussed below, the denial of benefits is reversed and the case is remanded for further proceedings.

## II.    PROCEDURAL BACKGROUND

Plaintiff is a 47-year-old female who alleges disability beginning on May 17, 2011 due to osteoarthritis, rheumatoid arthritis, a knee impairment, disc bulges in her neck and

back, obesity, and sleep apnea. AR 459-60, 462.[1] This is Plaintiff's second appeal of the Social Security Administration's denial of her January 31, 2013 claims for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433 (AR 182-85), and for SSI under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f (AR 176-81).

On September 19, 2014, the ALJ held the first administrative hearing. AR 36-58. On January 14, 2015, the ALJ denied Plaintiff's claims (AR 18-34), and his decision became final when the Appeals Council denied Plaintiff's request for review on June 14, 2016 (AR 1-6). *See* 42 U.S.C. § 405(h). Plaintiff filed suit and this Court remanded after finding the ALJ erred by applying a *res judicata* presumption of continuing non-disability based on the denial of Plaintiff's 2008 applications for benefits. AR 531-54.[2]

Following remand, the ALJ held a second administrative hearing on April 24, 2019. AR 477-95. On June 25, 2019, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 456-76. That decision became final 60 days later because Plaintiff did not request further review. Dkt. No. 1 at 2. Plaintiff then filed the present Complaint. Dkt. No. 1.

### III.   SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the five-step sequential evaluation process. AR 462-69. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability. AR 462.

---

[1]   "AR" refers to the Administrative Record lodged with this Court on January 7, 2020. Dkt. No. 12-13. The Court's citations to the AR use the page references on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court's citations are to the page numbers affixed by the CM/ECF.

[2]   Plaintiff filed prior claims for Title II and Title XVI benefits in November 2008. The Social Security Administration denied the claims upon finding that Plaintiff was not disabled. AR 459-60. The current applications are based on the same claimed disabilities, with the addition of obesity and sleep apnea. AR 462.

At step two, the ALJ found that Plaintiff had the following severe impairments: polyarthralgia, arthritis, chondromalacia patellar, and fibromyalgia. *Id*. He also found that Plaintiff's obesity and sleep apnea were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled those in the Commissioner's Listing of Impairments. AR 463.

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). AR 463-68. In reaching this conclusion, the ALJ found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms was not credible. The ALJ also rejected the opinion of Plaintiff's treating physician, Dr. Roshan Kotha, that Plaintiff's impairments rendered her unable to perform sedentary work.[3] *Id.*

At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. AR 468.

Finally, at step five, the ALJ accepted the vocational expert's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy. AR 468-69. The ALJ, therefore, concluded Plaintiff was not disabled. AR 469.

## IV.   ISSUES IN DISPUTE

Plaintiff raises two issues as grounds for reversal and remand:

1.   Whether the ALJ erred by rejecting Dr. Kotha's opinions; and

---

[3]   The ALJ utilizes multiple variations and misspellings when referring to Plaintiff's treating physician, whose correct name is Dr. Roshan Kotha. In addition to occasionally referring to Dr. Kotha correctly, the ALJ refers to her as "Kotha Roshan, M.D." (AR 465), "Rosham Kuthe, M.D." (AR 467), "Dr. Kuthe" (*id.*), and "Akhter Kotha, M.D." (*id.*). Some of the ALJ's mistakes are attributed to a misspelling of Dr. Kotha's name on records in the AR. AR 481.

2.   Whether the ALJ erred by finding Plaintiff's testimony was not fully credible. Dkt. No. 19 at 5.

## V.   STANDARD OF REVIEW

The Court reviews the ALJ's decision to determine if it is supported by substantial evidence and whether the ALJ applied the proper legal standards. 42 U.S.C. § 405(g); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id*.

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation omitted). "[I]f evidence exists to support more than one rational interpretation, [the Court] must defer to the Commissioner's decision." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## VI.   DISCUSSION

### A. The ALJ Provided Specific and Legitimate Reasons for Rejecting Dr. Kotha's Opinions

Plaintiff challenges the ALJ's rejection of Plaintiff's treating physician's opinions in favor of those rendered by state agency consulting physicians. Dkt. No. 19 at 7-8. The Court finds no error.

The Court reviews the ALJ's rejection of Dr. Kotha's opinions to determine if he provided "specific and legitimate reasons supported by substantial evidence." *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("If a treating . . . doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

4

Beginning in 2013, Dr. Kotha, a rheumatologist, treated Plaintiff about every six to eight weeks for rheumatoid arthritis and osteoarthritis in her knees and shoulders, rotator cuff tendonitis, and fibromyalgia. AR 1255. Her opinions regarding Plaintiff's capacity to perform a multitude of tasks necessary for employment are set forth in two documents she completed on January 9, 2019: a Pain Questionnaire (AR 1255-59) and a Medical Source Statement (AR 1252-53).[4]

Dr. Kotha reported that Plaintiff's symptoms include daily shoulder, knee, hand, and foot pain, fueling, and decreased range of motion in her joints. AR 1255. Dr. Kotha opined that these symptoms are "constantly" severe enough to interfere with Plaintiff's attention and ability to concentrate and that she is "severe[ly] limit[ed]" in her ability to deal with work stress. AR 1256. Dr. Kotha estimated that Plaintiff can only sit for 30 minutes and stand for five minutes at one time. AR 1252, 1257. When asked about Plaintiff's functional capacity over an eight-hour work day, Dr. Kotha opined that Plaintiff would require unscheduled 30-45 minute breaks every one to two hours (AR 1257-58), would need to walk for five minutes every 30 minutes (AR 1257), could only sit, stand, walk, or lift up to ten pounds for up to two hours (AR 1252, 1257-58), could only use her hands, fingers, and arms for repetitive tasks less than 10% of the time (AR 1252, 1258), and could never use her feet for repetitive movement like operating foot controls (AR 1253).

The ALJ gave no weight to Dr. Kotha's assessments, which he found were inconsistent with Plaintiff's own testimony, records of her physical examinations, and multiple treating physicians' recommendations that Plaintiff exercise. AR 467-68. Instead, the ALJ relied on the opinions of state agency consultants G. Taylor-Holmes, M.D. and

---

[4]     The documents containing Dr. Kotha's opinions are captioned Arthritis Residual Functional Capacity Questionnaire (AR 1255-59) and Residual Functional Capacity Questionnaire (AR 1252-53); however, because the ALJ and the parties refer to them as the Pain Questionnaire and Medical Source Statement, the Court does as well.

F. Kalmar, M.D., which he gave "significant but not great weight" and Frederick W. Close, M.D., whose opinion the ALJ did not assign a weight. *Id.*

The ALJ's reasons for rejecting Dr. Kotha's opinions are specific and legitimate and supported by substantial evidence. As the ALJ found, records from Plaintiff's physical examinations, including more recent examinations, reflect findings that were largely normal or within normal limits and which do not support Dr. Kotha's opinions. AR 378-81, 468. On December 26, 2017, Plaintiff underwent a stress echocardiogram, at which time she exercised for seven minutes and twenty-six seconds. AR 1110-11. The test was stopped only because Plaintiff achieved her maximum heart rate of 150, which was 85% of her predicted maximal heart rate. AR 1110. Based on these results, her cardiologist, Dr. Hassan Kafri, concluded Plaintiff had a fair functional exercise capacity and "good exercise tolerance for age." AR 1110-11.

The record also contains numerous treatment notes documenting findings inconsistent with Dr. Kotha's extremely restrictive assessment of Plaintiff's physical and mental capabilities. *See, e.g.*, AR 301 ("no clinical signs of synovitis for inflammatory arthropathy"); AR 357 ("evidence of inflammation in her joints, and skin, with elevated inflamm[atory] markers, but negative serologies" and negative antinuclear antibodies (ANA) test); AR 451 ("mildly abnormal" electromyography (EMG) and nerve conduction velocity (NCV) findings and "no frank evidence of polyneuropathy" relating to Plaintiff's lower back and leg pain); AR 1517-19 (physical examination findings indicate Plaintiff is alert and fully oriented and systems review is essentially negative; Plaintiff denies shortness of breath, dizziness or syncope, and numbness or tingling in extremities, and reports only occasional chest pain which relieves quickly; exercise and continued weight loss recommended); AR 1776-77 (Plaintiff reports no problems with daily activities, but has shortness of breath on exertion; Plaintiff denies having any joint swelling or stiffness); AR 1787 (Plaintiff reports some shortness of breath while eating and on exertion but "walking 2 blocks is a little better" and she "wakes [up] rested" after using her CPAP machine nightly); AR 1789 (physical examination findings indicate Plaintiff is alert and

fully oriented, not in distress, clear lungs, nonlabored breathing; exercise and continued weight loss recommended). These contemporaneous reports and findings, which are inconsistent with Dr. Kotha's assessment, are substantial evidence to reject her opinions. *See Magallanes*, 881 F.2d at 754 (upholding the ALJ's rejection of the treating physician's opinion where inconsistencies existed between his opinion and the medical evidence).

Moreover, the ALJ also found Dr. Kotha's assessment was inconsistent with Plaintiff's testimony about her workouts. *See* AR 467. For example, although Dr. Kotha opined that Plaintiff could "never" use her feet for repetitive movements required to operate foot controls, Plaintiff testified she regularly exercised using a sit-down elliptical machine. AR 485. This inconsistency between Dr. Kotha's opinion and Plaintiff's daily activities also supports the ALJ's rejection of Dr. Kotha's opinions. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding that an inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to reject the treating physician's opinion).

In contrast to Dr. Kotha, state agency consultants Drs. Taylor-Holmes and Kalmar concluded that Plaintiff could perform exertional tasks at a sedentary level with postural or manipulative limitations. AR 93-96, 106-09, 121-23, 134-36. When medical opinions conflict, as they do here, it is the ALJ's role to weigh the evidence and resolve the conflict. *See Batson*, 359 F.3d at 1193; *see also* 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). The state agency consultants concluded that if over an eight-hour work day Plaintiff periodically alternated between sitting and standing to relieve pain and discomfort, she could: stand and/or walk with normal breaks for a total of two hours; sit with normal breaks for a total of six hours; "frequently" lift and/or carry up to ten pounds; and operate hand

and/or foot controls limited only by the ten pound weight restriction.[5] AR 93-94, 106-07, 121-22, 134-35. Regarding Plaintiff's postural limitations, Drs. Taylor-Holmes and Kalmar concluded that Plaintiff could "occasionally" climb ramps or stairs, stoop, and crouch, but never balance, kneel, crawl, or climb ladders, ropes, or scaffolds. AR 94, 107, 122, 135. They found that Plaintiff's only manipulative limitation was a limited ability to reach overhead (45 minutes to an hour), but she was not limited with respect to handling, fingering, or feeling. AR 94-95, 107-08, 122-23, 135-36. They did not find any visual or communicative limitations, but they opined that Plaintiff should avoid concentrated exposure to extreme cold and vibration, and hazards like machinery and heights. AR 95, 108, 123, 136.

The ALJ largely concurred with Drs. Taylor-Holmes and Kalmar's opinions that Plaintiff could perform exertional tasks at a sedentary level (AR 467), which the ALJ correctly found were consistent with the record as a whole, for the reasons discussed above.[6] *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Additionally, because their opinions are consistent with the other medical evidence in the record, they further support the ALJ's rejection of Dr. Kotha's assessment. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

---

[5]    The state agency physicians concluded that Plaintiff could perform a certain activity "occasionally" if they believed he could engage in it for a cumulative total of up to one-third of an eight-hour day and "frequently" if he could sustain the activity for more than one-third and up to two-thirds of an eight-hour day. AR 93, 106, 121, 134.

[6]    The ALJ discounted the state agency physicians' assessment to the extent they found Plaintiff was limited in her ability to reach overhead, which the ALJ correctly found was not supported by multiple normal physical examination findings in the record. AR 467.

The ALJ's failure to assign a weight to Dr. Close's opinion is harmless. Dr. Close concluded that, with normal rest breaks, Plaintiff could sit for at least six hours and stand or walk for less than four hours in an eight-hour day. AR 381. Dr. Close also opined that Plaintiff should use a cane for balance and avoid uneven terrain and walking long distances. *Id.* He further opined that Plaintiff is capable of lifting and carrying twenty pounds "occasionally" and ten pounds "frequently," but should not bend, stoop, crouch, reach, handle, feel, grasp, or engage in fingering more than two-thirds of an eight-hour day. *Id.*

The ALJ discussed Dr. Close's assessment in detail. AR 465. The ALJ also assigned significant weight to the opinions of Drs. Taylor-Holmes and Kalmer (AR 467), both of whom reviewed Dr. Close's opinions and assigned them great weight (AR 93, 106, 121, 134). Thus, the ALJ's error in not also assigning a weight to Dr. Close's opinion is harmless. *See Rogal v. Colvin*, 590 F. App'x. 667, 670-71 (9th Cir. 2014) (Although "the ALJ did not expressly state what weight she assigned to Dr. Dixon's opinion," the error was harmless because "the ALJ thoroughly discussed Dr. Dixon's opinion and gave significant weight to Dr. Gollogly's opinion, which relied on Dr. Dixon's opinion."); *see generally Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, [a reviewing court] must uphold it if the agency's path may be reasonably discerned.") (internal quotation omitted).

In sum, the ALJ provided specific and legitimate reasons for rejecting Dr. Kotha's opinions in favor of those of Drs. Taylor-Holmes and Kalmer. The ALJ's reasons were also supported by substantial evidence in the record. The Court, therefore, finds no error.

## B. The ALJ Did Not Provide Specific, Clear and Convincing Reasons for Discounting Plaintiff's Statements

Plaintiff argues that the ALJ erred by not fully crediting her statements regarding the intensity, persistence, and limiting effects of her symptoms. Dkt. No. 19 at 17-26. The Court agrees that the ALJ's methodology did not meet the applicable legal standards.

In evaluating a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ

must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of her symptoms if she gives specific, clear and convincing reasons for the rejection." *Id.* (internal quotation omitted); *see also Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: [t]he clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (internal quotation omitted).

Plaintiff is 5'6" tall, and the record reflects that her weight fluctuates between approximately 235 and 260 pounds. *See e.g.*, AR 197, 1518, 1778. Plaintiff lives with her daughter, whom she raises alone, and has two adult children who live on their own. AR 41-42, 47. She has a master's degree in human services and worked full-time for 22 years as a pre-school teacher until she injured her back in 2008. AR 42, 44-45, 197-98, 483-84.

In her July 7, 2013 Disability Report, Plaintiff reported her symptoms as follows:

> The pain in all of my joints have gotten worse. I wake up stiff every morning and it takes an hour for joints to loosen[.] I have severe pain and inflammation in my hands, knees, and legs which makes it very painful and difficult to stand, sit, or walk for an extended period of time. My hands and fingers stay swollen all day which makes it difficult to do things. . . .

> I have severe joint pain while getting dressed and washing and combing my hair. My lower back hurts badly while sitting and walking for more than 15 minutes. It hurts severely when I stand in one place for more than 5 minutes. My legs, knees and hands hurt and swell up every day. I am very tired all of the time because I don't get enough sleep at night due to the pain I'm in. I am very forgetful. I have to ask my children and friends the same question over and over again because I forget what they tell me sometimes. . . .

I get sharp, throbbing pain in my legs while sitting down or standing up for more than a few minutes. I get lower back and neck spasms daily. I get sever[e] headaches daily now which causes me to have to lie down. I have rheumatoid arthritis and am on medication but still experience excruciating pain. I get severe lower back pain when [I] lift anything more than 5 pounds or when [I] sit down for more than a few minutes. Every joint in my body hurts and I never have a pain free moment. It hurts when I do anything and it hurts when I do nothing. . . .

I limit my driving because of lower back and knee pain. My children and family clean my house, cook, and grocery shop for me because of the pain I am in. I avoid climbing stairs because it hurts my knees severely. I don't lift anything over five pounds because it hurts my lower back and shoulders. My hands and fingers swell and hurt when I do anything with them. I constantly have to open and close my hands all day to prevent them from stiffening up completely. I have joint pain while getting dressed now.

AR 214-15, 218.

Plaintiff testified similarly at the September 19, 2014 hearing. AR 41. She reported she had difficulty standing and sitting due to having joint pain throughout her body. AR 47-48. She described her challenges with managing her pain: her rheumatoid arthritis symptoms worsened with inactivity, but movement triggered her osteoarthritis symptoms. AR 48-49. She "play[ed] musical seats all day long" to manage the pain, moving from her bed where she would lay down and elevate her feet, to her recliner, to the couch. AR 48. She described sitting upright to help her eight-year-old daughter with homework as "extreme torture." *Id.*

Plaintiff spent her days reading and listening to music. AR 50-51. She did not engage in social activities because she was usually in too much pain to leave her home. AR 53-54. An adult family member always accompanied her when she shopped. AR 49-50. She used a mobility vehicle to get around the store, but she would stand periodically to alleviate the pain of sitting. *Id.* She occasionally used a cane. AR 53.

Every day she walked her daughter up a small hill to the school bus stop a half-block away. AR 51. She tried walking around her apartment complex, which is level, but it was too painful and her arms and legs swelled afterwards. *Id.*

At the second hearing on April 24, 2019, Plaintiff testified that she still lived with and cared for her daughter, who by then was thirteen years old. AR 483. She no longer used the cane but periodically used a back brace. AR 485. She still did not leave home for social activities and a family member transported her daughter to school. AR 486-87.

In about February 2019, she began going to the gym three times a week to exercise with her cancer survivor group. AR 484-85. She used a sit-down elliptical machine for "[a] few minutes," light weights for her arms, and a "leg machine" that allowed her to extend her legs. AR 485.

She took Ibuprofen, Amitriptyline, and Plaquenil for pain management, used a CPAP machine for her sleep apnea, and used an Albuterol inhaler for shortness of breath. AR 483, 487-88.

The ALJ found that Plaintiff suffered from severe impairments that could reasonably produce some degree of her alleged symptoms and that she was not malingering. AR 464. The ALJ then found Plaintiff's testimony was not fully credible, reasoning that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical record and other evidence in the record." *Id.* The ALJ next summarized the medical evidence in roughly chronological order without identifying the inconsistencies or connecting any specific evidence to Plaintiff's testimony. AR 464-67.[7]

---

[7] Defendant argues the record supports the ALJ's credibility determination because Plaintiff's reported daily activities were inconsistent with her alleged limitations. Dkt. No. 19 at 31-33. The ALJ, however, did not rely on this as a reason to discount Plaintiff's credibility and the Court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (declining to infer that the ALJ rejected a claimant's testimony based on medical findings because the ALJ "never stated that he rested his adverse credibility determinations on those findings").

The ALJ's approach does not satisfy the requirement of providing "specific, clear and convincing reasons for the rejection" of Plaintiff's testimony. *Vasquez*, 572 F.3d at 591. Instead, the ALJ's ruling is analogous to what the Ninth Circuit found insufficient in *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015): the ALJ "simply stated [his] non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." This is "legal error" because the ALJ "did not link [the specific testimony he found not credible] to the particular parts of the record supporting [his] non-credibility determination." *Id.*; *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

In sum, because the ALJ rejected Plaintiff's testimony without linking it to specific parts of the record supporting his non-credibility determination, the Court finds that the ALJ's ruling did not comport with applicable Ninth Circuit law.

## C. Remand is Appropriate

The Court must next determine whether to remand for further administrative proceedings or for the payment of benefits. "The decision of whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). Because there are arguably inconsistencies between the medical evidence and Plaintiff's testimony, it is not clear that the ALJ was required to find Plaintiff disabled. Further administrative proceedings are, therefore, appropriate.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VII. CONCLUSION

For the foregoing reasons, the Court reverses the denial of benefits and remands this matter for further administrative proceedings.

IT IS SO ORDERED.

Dated:  March 29, 2021

Honorable Daniel E. Butcher
United States Magistrate Judge